# United States Court of Appeals
# for the District of Columbia Circuit

## No. 23-7106

ALLAN ROBERTS; JACO BOTES; NATASHA GROVE; STEVEN CROWLEY; JOHN JAMESON; ABDUL GHAFFAR MUGHAL; SITORAI KHASANZOD; KHALID MUGHAL; HAMID MUGHAL; ANGELA MUGHAL; N.M., by her Father and Next Friend, Abdul Ghaffar Mughal; M.M., by his Father and Next Friend, Abdul Ghaffar Mughal; GEORGE RIEKERT; SIMONE RIEKERT; M.R., by her Father and Next Friend, George Riekert; SIMON RIEKERT; WILHELMINA OOSTHUIZEN; CHANTE OOSTHUIZEN; SHIBONE DE BRUYN; SHAUN OOSTHUIZEN; MAGDALENA OOSTHUIZEN; GEORGE KIESER; MAGGIE KIESER; EMOGENE BOJE; SONE SMITH; GAVIN SMITH; JOHANNES KIESER; HESTER HART; ARNOLDUS KIESER; JOHANN STEENBERG; LORAINE STEENBERG; RENE BOTHA;

*(For Continuation of Caption See Inside Cover)*

*On Appeal from the United States District Court for the District of Columbia in No. 1:20-cv-01227-RCL, Honorable Royce C. Lambert, U.S. Senior District Judge.*

# BRIEF OF APPELLANTS

KEVIN A. HOFFMAN
RANDY SINGER
MARYAM M. ATTY
SINGER HOFFMAN, LLC
1209A Laskin Road
Virginia Beach, Virginia 23451
Tel.: (757) 301-9995
kevin.hoffman@singerhoffman.com
randy.singer@singerhoffman.com
maryam.atty@singerhoffman.com

*Counsel for Plaintiffs-Appellants*

December 11, 2023

JENE STEENBERG MARAIS; DESERE STEENBERG; LEON BOTHA; BRENDON BOTHA; LEANELLE BOTHA; DEAN CAPAZORIO; STEPHAN BRINK, Executor of the Estate of ESTELLE BRINK; PETRUS JOHAN VAN DER WESTHUIZEN, Executor of the Estate of CHRISTIAAN OOSTHUIZEN; ELZET STRAUCH, Executrix of the Estate of SUSAN DE CLERCQ; All Plaintiffs,

*Plaintiffs-Appellees,*

BETHAN JOHNSON; C.D.R., by his Father and Next Friend, Allan Roberts; O.J.C., by her Father and Next Friend, Steven Crowley; L.A.C., by her Father and Next Friend, Steven Crowley; SARAH CROWLEY; MICHAEL CROWLEY; PATRICIA CROWLEY; KRISTIN JAMESON; EDITH NICHOL; THOMAS JAMESON,

*Plaintiffs-Appellants.*

*v.*

ISLAMIC REPUBLIC OF IRAN,

*Defendant-Appellee.*

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| **ALLAN ROBERTS et al.,** | ) | |
| | ) | |
| **Plaintiffs-Appellants,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 23-7106** |
| | ) | |
| **ISLAMIC REPUBLIC OF IRAN et al.,** | ) | |
| | ) | |
| **Defendants-Appellees.** | ) | |

### <u>PLAINTIFFS-APPELLANTS' CERTIFICATE</u>

This Certificate is submitted by Allan Roberts et al. ("Plaintiffs-Appellants")

as directed by the Court's Order filed August 11, 2023 [2012106].

## I.    PARTIES AND AMICI

Plaintiffs-Appellants submit the following as a list of known parties

appearing in this Court in this matter:

- C.D.R., by his Father and Next Friend, Allan Roberts;

- Bethan Johnson;

- O.J.C, by her Father and Next Friend, Steven Crowley;

- L.A.C., by her Father and Next Friend, Steven Crowley;

- Sarah Crowley;

- Michael Crowley;

- Patricia Crowley;

- Kristin Jameson;

- Edith Nichol;

- Thomas Jameson;

- Islamic Republic of Iran.

Plaintiffs-Appellants are not aware of any intervenors or amici appearing in this matter.

## II. RULINGS UNDER REVIEW

The following rulings issued by the United States District Court for the District of Columbia are at issue in this matter:

- Order Denying Motion for Default Judgment as to the English Family Member Plaintiffs, ECF No. 48, dated July 5, 2023;

- Order entering final judgment as to the English Family Member Plaintiffs, ECF No. 52, dated July 31, 2023.

## III. RELATED CASES

This matter on review has not previously been before this Court, or any other court, and, to Plaintiffs-Appellants' knowledge, there are no related cases.

Respectfully submitted,

/s/ Kevin A. Hoffman
Randy D. Singer, Esq. (DCD Bar No. VA057)
Kevin A. Hoffman, Esq. (DC Bar No. 1044559)
Maryam M. Atty, Esq. (DCD Bar No. VA137)
SINGER DAVIS, LLC
1209A Laskin Road
Virginia Beach, VA 23451
Phone: (757) 301-9995
Facsimile: (757) 233-1084
Email: randy.singer@singerdavis.law
Email: kevin.hoffman@singerdavis.law
Email: maryam.atty@singerdavis.law
*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................i

GLOSSARY.........................................................................................v

I.     JURISDICTIONAL STATEMENT ..............................................1

II.    STATEMENT OF ISSUES FOR REVIEW....................................2

III.   PERTINENT STATUTORY PROVISIONS ...................................2

IV.   STATEMENT OF THE CASE ....................................................4

     A.    FACTUAL BACKGROUND ..............................................7

     B.    PROCEDURAL HISTORY ...............................................8

V.    SUMMARY OF THE ARGUMENT .............................................9

VI.   ARGUMENT...........................................................................10

     A.    STANDARD OF REVIEW ...............................................10

     B.    STATE-LAW CLAIMS FOR EMOTIONAL DISTRESS
            BROUGHT BY FOREIGN FAMILY MEMBERS OF
            TERROR VICTIMS OF ATTACKS TARGETING THE
            UNITED STATES SHOULD BE DECIDED UNDER
            D.C. LAW. ...................................................................11

          (i)    Applying D.C. Choice-of-Law Analysis Favors Both
                   the Forum and the Place of the Attack over the
                   Plaintiffs' Domicile in this Case ...............................12

          (ii)   The Unique Nature and Purpose of the FSIA Dictates
                   Application of D.C. Law............................................14

     C.    EVEN IF ENGLISH LAW WAS CORRECTLY APPLIED,
            THE DISTRICT COURT ERRONEOUSLY REJECTED
            CREDIBLE AND UNCONTROVERTED EVIDENCE
            PRESENTED BY PLAINTIFFS' EXPERT ......................................22

          (i)    Mr. Bagot's Expert Credentials are Unchallenged ...................23

          (ii)   Mr. Bagot Presented Uncontroverted and Credible
                   Evidence Supporting Plaintiffs-Appellants *Prima Facie*
                   Case under English Law ............................................24

VII.  CONCLUSION......................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abedini v. Gov't of Islamic Republic of Iran*,
  422 F. Supp. 3d 118 (D.D.C. 2019)........................................................18

*Beer v. Islamic Republic of Iran,*
  574 F. Supp. 2d 1 (D.D.C. 2008).........................................................20

*Bennett v. Islamic Republic of Iran*,
  507 F. Supp. 2d 117 (D.D.C. 2007).....................................................22

*Blais v. Islamic Republic of Iran*,
  459 F. Supp. 2d 40 (D.D.C. 2006).......................................................20

*Bluth v. Islamic Republic of Iran*,
  203 F. Supp. 3d 1 (D.D.C. 2016).........................................................22

*Borochov v. Islamic Republic of Iran*,
  589 F. Supp. 3d 15 (D.D.C. 2022).......................................................21

*Cicippio-Puelo v. Islamic Republic of Iran*,
  353 F.3d 1024 (D.C. Cir. 2004).............................................................6

*City of Harper Woods Emps. Ret. Sys. v. Olver*,
  589 F.3d 1292 (D.C. Cir. 2009)............................................................23

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990)...............................................................................11

*Doe v. Exxon Mobil Corp.*,
  654 F.3d 11 (D.C. Cir. 2011), *affirmed in part on reh'g,*
  *Doe v. Exxon Mobil Corp.*, 527 F. App'x 7 (D.C. Cir. 2013) ...................... 16, 17

*Elahi v. Islamic Republic of Iran*,
  124 F. Supp. 2d 97 (D.D.C. 2000).......................................................22

*End Citizens United Pac v. Fed. Election Comm'n*,
  69 F.4th 916 (D.C. Cir. 2023).............................................................10

*Est. of Doe v. Islamic Republic of Iran*,
  808 F. Supp. 2d 1 (D.D.C. 2011)................................................... 15, 18

*Est. of Heiser v. Islamic Republic of Iran,*
  466 F. Supp. 2d 229 (D.D.C. 2006).....................................................20

*Force v. Islamic Republic of Iran,*
    464 F. Supp. 3d 323 (D.D.C. 2020)......................................................21

*Fraenkel v. Islamic Republic of Iran,*
    248 F. Supp. 3d 21 (D.D.C. 2017)......................................................21

*Fraenkel v. Islamic Republic of Iran,*
    892 F.3d 348 (D.C. Cir. 2018)................................................. 11, 14

*Fritz v. Islamic Republic of Iran,*
    320 F. Supp. 3d 48 (D.D.C. 2018)........................... 6, 16, 17, 18

*Han Kim v. Democratic People's Republic of Korea,*
    774 F.3d 1044 (D.C. Cir. 2014)........................................................22

*Henkin v. Islamic Republic of Iran,*
    No. 18-cv-1273, 2021 WL 2914036 (D.D.C. July 12, 2021)..............................20

*Hercules & Co., Ltd. v. Shama Rest. Corp.,*
    566 A.2d 31 (D.C. 1989) ....................................... 12, 13

*Kaiser–Georgetown Cmty. Health Plan v. Stutsman,*
    491 A.2d 502 (D.C. 1985) .......................................................12

*Leibovitch v. Islamic Republic of Iran,*
    697 F.3d 561 (7th Cir. 2012) ................................................19

*McKesson Corp. v. Islamic Republic of Iran,*
    753 F.3d 239 (D.C. Cir. 2014)........................................ 22-23

*Oveissi v. Islamic Republic of Iran,*
    573 F.3d 835 (D.C. Cir. 2009)............................... 17-18, 21

*Owens v. Republic of Sudan,*
    826 F. Supp. 2d 128 (D.D.C. 2011).................... 12, 15, 16, 17

*Owens v. Republic of Sudan,*
    864 F.3d 751 (D.C. Cir. 2017)............................ 6, 20, 21, 22

*Rimkus v. Islamic Republic of Iran,*
    575 F. Supp. 2d 181 (D.D.C. 2008)..................................20

*United States v. Taylor,*
    487 U.S. 326 (1988)..............................................................11

*W.A. v. Islamic Republic of Iran,*
    427 F. Supp. 3d 117 (D.D.C. 2019)........................... 6, 16, 18

*Wamai v. Republic of Sudan*,
 60 F. Supp. 3d 84 (D.D.C. 2014), *aff'd in part vact'd in part on unrelated grounds in* 864 F.3d 751 ................................................................. 18-19

**Statutes and Other Authorities:**

28 U.S.C. § 1291 ....................................................................................1

28 U.S.C. § 1330(a) ...............................................................................1

28 U.S.C. § 1330(b) ...............................................................................1

28 U.S.C. § 1331 ....................................................................................1

28 U.S.C. § 1332(a)(2) ...........................................................................1

28 U.S.C. § 1367 ....................................................................................1

28 U.S.C. § 1391(f)(4) .....................................................................13, 20

28 U.S.C. § 1605A ............................................................................1, 22

28 U.S.C. § 1605A(a) .............................................................................2

28 U.S.C. § 1605A(b) .............................................................................2

28 U.S.C. § 1605A(c) ....................................................................... 2, 5, 6

28 U.S.C. § 1608(a)(3) ...........................................................................9

28 U.S.C. § 1608(a)(4) ...........................................................................9

Fed. R. Civ. P. 44.1 ..............................................................................23

Fed. R. Civ. P. 54(b) ..........................................................................1, 9

H.R. Rep. 105–48 ................................................................................19

Public Law 104-208 ...........................................................................3, 4

Black's Law Dictionary ........................................................................23

Restatement (Second) of Conflict of Laws § 145(2) (1971) ...................13

Restatement (Third) of Foreign Relations Law § 402 (1987) .................13

# GLOSSARY

Iran                            The Islamic Republic of Iran

Plaintiffs                      Plaintiffs-Appellants and/or

                                The English Family Member Plaintiffs

FSIA                            Foreign Sovereign Immunities Act

EFP                             Explosively Formed Penetrator (weapon)

# I.    JURISDICTIONAL STATEMENT

The district court had jurisdiction over the case below pursuant to 28 U.S.C. §§ 1330(a) and (b), 1331, 1332(a)(2), 1367, and 1605A, as part of a civil action involving foreign citizen family members of individuals injured through an act of international terrorism while performing contracts awarded by the United States Government. Appendix at 138–39, [hereinafter "A"].[1] On July 5, 2023, the district court issued an Order denying default judgment as to the subset of ten individual plaintiffs identified by the Court as the "English Family Member Plaintiffs" ("Plaintiffs-Appellants").[2] A260. Because that Order did not dispose of all the parties and issues in the case, Plaintiffs-Appellants moved for entry of final judgment as to their denied claims pursuant to Federal Rule of Civil Procedure 54(b). A263. The district court granted that request on July 31, 2023, entering final judgment against the English Family Member Plaintiffs. A274–75.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The appeal is taken from a final judgment entered by a district court within the

---

[1] References to Plaintiffs' Complaint will begin with the page number(s) referenced within the Appendix, followed by the specific paragraph number(s) cited. All other documents within the Appendix will simply be referred to by page number.

[2] All the other plaintiffs' claims in the case were granted as to liability and are proceeding through the damages phase.

District of Columbia Circuit on July 31, 2023. A274–75. Plaintiffs timely filed a notice of appeal on August 7, 2023. A20.

## II.    STATEMENT OF ISSUES FOR REVIEW

1.    Whether state-law claims brought by the foreign-citizen family members of victims of terrorist attacks to recover for emotional distress in a Foreign Sovereign Immunities Act case brought against a state sponsor of terrorism should be decided under the law of the place of the attack, the law of each plaintiff's domicile, or the law of the District of Columbia.

2.    If the ruling below as to the choice-of-law analysis is upheld, whether the trial court acted appropriately by disregarding Plaintiffs-Appellants' uncontroverted expert report and finding that Plaintiffs-Appellants are unable to recover under English law.

## III.    PERTINENT STATUTORY PROVISIONS

28 USC 1605A(a)–(c) - Terrorism exception to the jurisdictional immunity of a foreign state.

(a) In general —

(1) No immunity – A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

2

(2) Claim heard – The court shall hear a claim under this section if –

(A)(i)(I) the foreign state was designated as a state sponsor of terrorism at the time the act described in paragraph (1) occurred, or was so designated as a result of such act, and, subject to subclause (II), either remains so designated when the claim is filed under this section or was so designated within the 6-month period before the claim is filed under this section; or

(A)(i)(II) in the case of an action that is refiled under this section by reason of section 1083(c)(2)(A) of the National Defense Authorization Act for Fiscal Year 2008 or is filed under this section by reason of section 1083(c)(3) of that Act, the foreign state was designated as a state sponsor of terrorism when the original action or the related action under section 1605(a)(7) (as in effect before the enactment of this section) or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208) was filed;

(A)(ii) the claimant or the victim was, at the time the act described in paragraph (1) occurred –
(I) a national of the United States;
(II) a member of the armed forces; or
(III) otherwise an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment; and

(A)(iii) in a case in which the act occurred in the foreign state against which the claim has been brought, the claimant has afforded the foreign state a reasonable opportunity to arbitrate the claim in accordance with the accepted international rules of arbitration; or

(B) the act described in paragraph (1) is related to Case Number 1:00CV03110 (EGS) in the United States District Court for the District of Columbia.

(b) Limitations—An action may be brought or maintained under this section if the action is commenced, or a related action was commenced under section

1605(a)(7) (before the date of the enactment of this section) or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208) not later than the latter of—
(1) 10 years after April 24, 1996; or
(2) 10 years after the date on which the cause of action arose.

(c) Private right of action—A foreign state that is or was a state sponsor of terrorism as described in subsection (a)(2)(A)(i), and any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, shall be liable to—

(1) a national of the United States,
(2) a member of the armed forces,
(3) an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment, or
(4) the legal representative of a person described in paragraph (1), (2), or (3), for personal injury or death caused by acts described in subsection (a)(1) of that foreign state, or of an official, employee, or agent of that foreign state, for which the courts of the United States may maintain jurisdiction under this section for money damages. In any such action, damages may include economic damages, solatium, pain and suffering, and punitive damages. In any such action, a foreign state shall be vicariously liable for the acts of its officials, employees, or agents.

## IV.  STATEMENT OF THE CASE

On March 16, 2010, three contractors of English citizenship were severely injured by the roadside detonation of an explosively formed penetrator ("EFP") in Iraq while carrying out their security duties in service to the United States government. As a result, one contractor lost both of his legs; another had his left leg amputated; and the third sustained injuries to his knees, hips, back, neck, and shoulders. All have experienced significant ongoing physical and mental health

complications. Understandably, not only were the lives of these contractors devastated because of this violent event, but their family members have suffered intense emotional distress.

Because of their status as employees of the United States, all three contractors were granted liability against Iran pursuant to the federal cause of action found within the terrorism exception of the Foreign Sovereign Immunities Act ("FSIA") located at 28 U.S.C. § 1605A(c). A155. Liability was also found on behalf of other contractors injured in similar attacks, as well as their family members who possessed either American citizenship or South African citizenship. A155, A261–62.

Despite this, the English Family Member Plaintiffs were denied recovery solely on the basis of their country of citizenship. These disparate outcomes were the result of two main errors with the lower court's decision: (1) a misapplication of D.C. choice-of-law provisions, both generally, as well as under the explicit policy intentions of the FSIA; and (2) a rejection of credible and uncontroverted expert testimony presented by the Plaintiff-Appellants' expert on English law. The result of these errors is that some family members will recover, while others do not, for the same injuries, despite an overall strong relationship of this case to United States government interests and clear liability that is shared between all the claims.

The FSIA was originally not interpreted to create a federal cause of action, but rather to operate as a "pass-through" for state law claims. *See Owens v. Republic of Sudan*, 864 F. 3d 751, 763 (D.C. Cir. 2017); *Cicippio-Puelo v. Islamic Republic of Iran*, 353 F.3d 1024, 1033 (D.C. Cir. 2004). But the FSIA was amended in 2008 to explicitly authorize the federal cause of action now found in Section 1605A(c); however, this amendment "did not upset the prior law permitting plaintiffs to assert state law claims after clearing the hurdle of foreign sovereign immunity." *Fritz v. Islamic Republic of Iran*, 320 F. Supp. 3d 48, 89 (D.D.C. 2018) (citing *Owens,* 864 F.3d at 807–09); *see W.A. v. Islamic Republic of Iran*, 427 F. Supp. 3d 117, 138 (D.D.C. 2019). Therefore, after 2008, FSIA plaintiffs may choose to pursue either the federal cause of action or state law causes of action. For family member plaintiffs of foreign citizenship, like Plaintiffs-Appellants, state law causes of action are the only path. *See, e.g.*, *W.A.*, 427 F. Supp. 3d at 139. This Appeal first focuses on the question of *what* body of law applies to the English Family Member Plaintiffs' claims. *See A120.

Finally, the district court's ultimate decision on the English law claims also runs contrary to the goals of the FSIA. Plaintiffs-Appellants proved their *prima facie* case through uncontroverted and credible expert testimony. Despite this, the Court impermissibly discarded the substance of that uncontroverted evidence to deny Plaintiffs-Appellants' claims.

This Court should reverse the judgment entered against the English Family Member Plaintiffs and remand for further proceedings based on an appropriate choice-of-law analysis.

A.    FACTUAL BACKGROUND

On March 16, 2010, Allan Roberts, Steven Crowley, and John Jameson were traveling in the last vehicle of a four-vehicle convoy in Iraq as part of their duties as contractors for companies employed by United States. A107. At an Iraqi police checkpoint, an explosion occurred near the driver's side door of the vehicle. A99. As a result of the explosion, Mr. Roberts lost both legs, Mr. Crowley's left leg was surgically amputated, and Mr. Jameson sustained various injuries to his knees, hips, back, neck, shoulders, head, and eardrums. *Id*. The team was later informed by investigators that the explosion had been caused by an EFP device. *Id.*

Following the 2003 invasion of Iraq by the United States and its allies, Iran instituted a "multi-faceted, interventionist policy in Iraq" aimed at establishing a pro-Iranian Iraqi government and blocking American goals in the region. A84. A significant part of that effort was the manufacture, delivery, and use of EFPs, battlefield weapons specifically designed to pierce the armored vehicles used by United States military forces and their contractors. A84–85. These EFP's were first developed in the 1990s by Hezbollah, Iran's premier proxy militia, and distributed to Iranian proxy militias in Iraq beginning in 2004. A92–94. EFP's soon became

"the signature weapon of Iranian-support Special Groups," and their use in attacks in Iraq was indicative of Iranian planning and execution. *See id*. Consequently, Iran's material support of these proxy groups through the provision of EFP's and other backing resulted in numerous attacks on U.S. military forces and contractors—like Mr. Roberts, Mr. Crowley, and Mr. Jameson here.[3] *See* A96–97.

There are ten English Family Member Plaintiffs presenting this appeal for damages stemming from the March 16, 2010 EFP attack. The family members of Mr. Roberts are his minor son, C.D.R, and his fiancée, Bethan Johnson. The family members of Mr. Crowley are his minor daughters, O.J.C. and L.A.C.; his sister, Sarah Crowley; his father, Michael Crowley; and his mother, Patricia Crowley. The family members of Mr. Jameson are his wife, Kristin Jamson; his mother, Edith Nichol; and his father, Thomas Jameson. Each of these ten individuals sustained significant emotional injuries as a result of the harm suffered by their loved one. *See* A53 ¶ 230; A56 ¶ 254; A58 ¶ 266.

## B.     PROCEDURAL HISTORY

Plaintiffs-Appellants filed their Complaint in this matter on May 11, 2020. A22–81. A summons was issued against Iran the following day. A17. Plaintiffs-

---

[3] In its first Memorandum Opinion, the district court reviewed Plaintiffs' evidence of Iranian EFP production and support for Iranian proxy militias in Iraq and concluded that it found "Iran responsible for the March 16, 2010 EFP attack by supporting proxy forces who conducted the attack." A130, 137.

Appellants initiated service by mail under 28 U.S.C. § 1608(a)(3) on June 8, 2020, which was processed by the Clerk's Office on June 9, 2020 and failed on July 15, 2020. *Id*. After waiting the requisite thirty days, Plaintiffs-Appellants initiated diplomatic service pursuant to 28 U.S.C. § 1608(a)(4). *Id*. Iran was formally served on November 4, 2020. A18. Plaintiffs-Appellants requested entry of default on January 12, 2021 and the Clerk entered it the next day. *Id*. The Court initially granted default judgment as to liability for the attack victims and American family members—but denied, without prejudice, all of the foreign family member claims. A119–56.

On November 22, 2022, Plaintiffs-Appellants filed a Second Motion for Default Judgment seeking relief on behalf of the foreign family members. A57-240. On July 5, 2023, the district court issued an Order granting the claims of South African family members but denying the English Family Member Plaintiffs' claims. *See* A261–62. On July 27, 2023, Plaintiffs-Appellants moved for entry of final judgment with respect to the English Family Member Plaintiffs pursuant to Federal Rule of Civil Procedure 54(b). A263. The district court granted this unopposed request on July 31, 2023. A274–76.

## V.    SUMMARY OF THE ARGUMENT

The court below reasoned that (1) D.C.'s choice-of-law analysis dictated application of English law for the English Family Member Plaintiffs; and that (2)

English law provided no relief for Plaintiffs-Appellants' claims of emotional distress. The two reasons why this ruling should be reversed are addressed herein.

First, the lower court erred because the District of Columbia's choice-of-law analysis requires application of D.C. law due to the unique nature of these actions and the special relationship that D.C. has to these types of claims that goes well beyond merely its role as the forum jurisdiction. In the event that this Court is not inclined to apply D.C. law, the plaintiffs' domicile would still not be a more appropriate selection than the place of attack at issue in this matter, Iraq.

Second, even if this Court's choice-of-law analysis leads to the application of English law, the district court improperly discounted the opinion of Plaintiffs-Appellants' English law expert by disregarding his uncontroverted conclusions that an avenue of recovery is available to these individuals under English law. The judgment against Plaintiffs-Appellants should be reversed regardless of which body of law is applied.

## VI.    ARGUMENT

### A.    STANDARD OF REVIEW

Although the decision of a trial court to grant or deny a request for default judgment is generally reviewed for "abuse of discretion," there is necessarily an abuse of discretion where the ruling below is based "on an error of law." *End Citizens United Pac v. Fed. Election Comm'n*, 69 F.4th 916, 920 (D.C. Cir. 2023).

Another example of a reversible abuse of discretion would be "a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). And importantly, when "assessing whether the District Court has abused its discretion, we must always 'ensure that the purposes of the' statute granting discretion to the trial court—in this case, the FSIA—'are given effect.'" *Fraenkel v. Islamic Republic of Iran*, 892 F.3d 348, 356 (D.C. Cir. 2018) (quoting *United States v. Taylor*, 487 U.S. 326, 336 (1988)).

B.  STATE-LAW CLAIMS FOR EMOTIONAL DISTRESS BROUGHT BY FOREIGN FAMILY MEMBERS OF TERROR VICTIMS OF ATTACKS TARGETING THE UNITED STATES SHOULD BE DECIDED UNDER D.C. LAW.

The trial court applied D.C. choice-of-law analysis to reach the conclusion that it was appropriate to apply the law of each Plaintiffs-Appellants' citizenship to determine whether a valid cause of action existed for their claims of emotional distress. Plaintiffs-Appellants suggest that this is the wrong approach for two reasons. First, applying the facts of this case to the blended tests used in D.C. choice-of-law analysis leaves a plaintiff's home jurisdiction as the least appropriate option behind both D.C. and Iraq. Second, when looking further at the nature and purpose of the FSIA's terrorism exception, D.C. law is the best choice.

     (i)     Applying D.C. Choice-of-Law Analysis Favors Both the Forum
             and the Place of the Attack over the Plaintiffs' Domicile in this
             Case

To determine which jurisdiction's substantive law governs a dispute, District
of Columbia courts blend a "governmental interests analysis" with a "most
significant relationship" test. *Hercules & Co., Ltd. v. Shama Rest. Corp.,* 566 A.2d
31, 40–41 & n.18 (D.C. 1989).

Under the governmental interests analysis, courts "must evaluate the
governmental policies underlying the applicable laws and determine which
jurisdiction's policy would be most advanced by having its law applied to the facts
of the case under review." *Id.* at 41 (internal quotation marks omitted). "As a
general rule, the law of the forum governs, 'unless the foreign state has a greater
interest in the controversy.'" *Owens v. Republic of Sudan*, 826 F. Supp. 2d 128,
154 (D.D.C. 2011) (quoting *Kaiser–Georgetown Cmty. Health Plan v. Stutsman*,
491 A.2d 502, 509 (D.C. 1985)).

The critical fact here relevant to the governmental interests analysis is that
the EFP attack central to this matter was targeted at the interests of the United
States. The attack victims were not targeted because of who they were as
individuals, but because of who their employer was. The United States has a strong
and unique interest "to prescribe law with respect to certain conduct outside its
territory by persons not its nationals that was directed against the security of the

state." Restatement (Third) of Foreign Relations Law § 402 (1987). Those interests are centralized within D.C., which also happens to be the forum of this litigation.[4] Comparatively, the jurisdictions of a plaintiff's domicile only relevant interest is "in providing redress to its citizens," an interest that the court below found to be "decidedly greater" than D.C.'s interests. A248. This Court should reject the reasoning of the trial court and find that the governmental interests analysis favors application of D.C. law.

To determine which jurisdiction has the most significant relationship to a case, a court must "consider the factors enumerated in the Restatement." *Hercules*, 566 A.2d at 40. The four factors are: (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) "the domicil[e], residence, nationality, place of incorporation and place of business of the parties"; and (4) "the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2) (1971).

All three of the potential jurisdictions at issue for the English Family Member Plaintiffs are invoked by the Restatement's four factors. The place where the injury occurred is where the relevant plaintiffs lived. The place where the conduct causing the injury occurred is Iraq. The third factor points to English law

---

[4] It is presumably for similar reasons that Congress stipulated that D.C. actions against foreign states may always be brought in D.C. for venue purposes. *See* 28 U.S.C. § 1391(f)(4).

based on the nationality of the relevant parties. The place where the relationship between the parties is centered would look to either Iraq or D.C. law, as the United States government's policies surrounding the reconstruction effort in post-invasion Iraq were the reason for the attack.

Based on the wide variety of intersecting factors at play in the most significant relationship analysis, it is best considered as not a strong pull in any direction. The trial court, however, considered the only significant relationship of D.C. to the case as its role as the forum state, but also dismissed the relationships of Iraq to the claim and gave no weight to D.C. as the seat of government employing the victims in this case or for its interest in deciding cases relevant to national security. *See* A249. This analysis was insufficient and should not control the outcome. Given the blended nature of D.C. choice-of-law analysis, and considering that the governmental interests test here leans heavily towards applying D.C. law, the latter analysis should control the outcome. This result is even more appropriate when analyzing the unique nature and purpose of the FSIA vis-à-vis victims of terrorism and their family members.

> (ii) The Unique Nature and Purpose of the FSIA Dictates Application of D.C. Law

FSIA cases require a specialized approach to D.C.'s choice-of-law analysis because the statute's purposes are a key factor. *See Fraenkel*, 892 F.3d at 356. One of those purposes was to "promote uniformity and extend access to U.S. federal

courts to foreign national immediate family members of victims of terrorism."

*Owens*, 826 F. Supp. 2d at 154–55; *see also Est. of Doe v. Islamic Republic of Iran*, 808 F. Supp. 2d 1, 23 (D.D.C. 2011) (defining the "Congressional desire to promote uniformity").

As a result, D.C. law has regularly been applied by D.C. trial courts to emotional distress claims of foreign family members under the FSIA and, in some cases, has even remained unchallenged and been implicitly accepted by this Court on appeal. In *Owens v. Republic of Sudan*, the trial court addressed the issue in the same context as the one here:

> Here, as in *Estate of Doe*, the choice of law analysis pertains only to non-U.S. national family members of victims of the terrorist attacks (who lack a federal cause of action), and the balance of interests suggests a different outcome from the FSIA cases involving U.S. citizen plaintiffs.
>
> Consistent with *Dammarell* and other FSIA cases, United States domestic law *remains more appropriate* in state-sponsored terrorism cases than foreign law. Furthermore, in light of the 2008 amendments to FSIA that seek to promote uniformity and extend access to U.S. federal courts to *foreign national immediate family members of victims of terrorism*, the law of the *forum* state, the District of Columbia, should provide the rule of decision.

826 F. Supp. 2d at 154–55 (emphasis added).

Similarly, in *W.A. v. Islamic Republic of Iran*, the lower court again analyzed how best to apply D.C.'s choice of law rules for the claims of foreign family member plaintiffs:

> Considering both tests, the Court concludes that the law of the forum state, the District of Columbia, should apply in this case. The United States has a "unique interest" in having its own laws apply in litigation involving acts of terrorism, especially when those acts, such as this one, are committed to weaken United States' interests and policies abroad.

427 F. Supp. 3d at 139–40 (citing *Owens,* 826 F. Supp. 2d at 155). The Court in *W.A.* went on to explain that in cases where the victim was targeted "because of his or her relationship to the United States government" the court should apply D.C. as the "law of the seat of the federal government" because such acts of terrorism were ultimately directed at the United States, even though the victim was not an American citizen. 427 F. Supp. 3d at 139 (citing *Fritz*, 320 F. Supp. 3d at 91).

Despite this well-established and persuasive precedent, the lower court termed the proposed application of D.C. law to be "the epitome of forum shopping." A249. Instead, the court looked to *Doe v. Exxon Mobil Corp.* for the proposition that the district courts "should have compared the interests of the *individual jurisdictions*, not the interest of the United States as a whole." A153 (citing 654 F.3d 11 (D.C. Cir. 2011), *affirmed in part on reh'g, Doe v. Exxon Mobil Corp.*, 527 F. App'x 7 (D.C. Cir. 2013)).

However, this reasoning simply does not apply to the present case. While the court in *Doe* applied the law of the plaintiff's domicile (Indonesia), the *Doe* plaintiffs brought their claims pursuant to the Alien Tort Statute and Torture Victim Protection Act, not the FSIA. *See Doe*, 654 F.3d at 15. The analysis under the FSIA differs because it must incorporate the policy objectives of the statute, including those from the law's 2008 amendments, such as the governmental interest the United States has in cases involving terrorist attacks targeting its employees. *See Owens*, 826 F. Supp. 2d at 154–55.

In its memorandum opinion, the lower court also stated that it was unclear whether Plaintiffs-Appellants "focus on D.C. law merely because it is the domestic law of the forum or because D.C. is the location of the federal government," but found either interest insufficient "to elevate D.C.'s interests above those of other jurisdictions." A247–48. But this concern is unwarranted.

A "unifying factor" in many FSIA cases is that the foreign family member claims "derive from employment with a federal agency headquartered in the District of Columbia, the seat of the federal government." *See* A164; *see also Fritz*, 320 F. Supp. 3d at 91 (discussing *Owens*, 826 F. Supp. 2d at 154) (holding that "D.C. law, rather than the law of the places of the tort (Kenya and Tanzania) or the place of the domicile of each plaintiff (including both U.S. and foreign locations), was appropriate"); *but see Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 843

(D.C. Cir. 2009) (applying French law to IIED claims despite post-2008 amendments, because, unlike other cases, victim was neither employed by a United States agency *headquartered in D.C.*, nor was the attack intended to "affect the United States").

While this Court has not directly ruled on this issue, there are numerous persuasive and well-reasoned examples of trial courts finding that D.C. law should apply to foreign family member claims for emotional distress. *See e.g.*, *W.A.*, 427 F. Supp. 3d at 139 (finding that D.C. law "should provide the rule of decision" for foreign national family member plaintiffs of foreign national victim killed "because of his or her relationship to the United States government"); *Abedini v. Gov't of Islamic Republic of Iran*, 422 F. Supp. 3d 118, 135 (D.D.C. 2019) (applying D.C. law to foreign-national family member plaintiff's IIED claim to prevent "inconsistent results among family members of FSIA terrorism victims"); *Fritz*, 320 F. Supp. 3d at 91 (emphasizing the "unique interest" of the United States and concluding that "the same considerations apply here and that D.C. law, rather than Canadian or Iraqi law, should govern"); *Est. of Doe*, 808 F. Supp. 2d at 21 (concluding that "in light of the 2008 amendments to FSIA that seek to promote uniformity and extend access to U.S. federal courts to foreign national immediate family members of victims of terrorism, the law of the forum state, the District of Columbia, should provide the rule of decision"); *Wamai v. Republic of Sudan*, 60

F. Supp. 3d 84, 89-90 (D.D.C. 2014) (explaining that courts generally "apply District of Columbia law to the claims of any plaintiffs for whom jurisdiction is proper, but who lack a federal cause of action under the FSIA"), *aff'd in part vact'd in part on unrelated grounds in* 864 F.3d at 811-812 (this Court implicitly approved the application of D.C. law to foreign family member claims by certifying a question regarding such claims to the D.C. Court of Appeals).

Finally, the underlying policy of the FSIA compels application of D.C. law here by one outstanding feature: the relationship of the attack (the tortious conduct) to the United States. The FSIA is an explicit exception to a foreign state's sovereign immunity, designed with certain specific policy outcomes in mind, including allowing the family members of those persons killed or injured by terror attacks while they are employed by the United States to recover for derivative emotional injuries from the harm inflicted upon their loved ones.[5]

In *Owens*, the Court implicitly confirmed the appropriateness of applying D.C. law to foreign family member plaintiff's claims for emotional distress:

> Because the great majority of claims under the FSIA
> terrorist exception are brought in the federal district court

---

[5] This specific Congressional intention was discussed by the Seventh Circuit in the context of extending jurisdiction in FSIA cases to either a claimant or victim who was a U.S. citizen at the time of the attack. *Leibovitch v. Islamic Republic of Iran*, 697 F.3d 561, 570 (7th Cir. 2012) (quoting H.R. Rep. 105–48 at 2 (1996)). This same purpose and intent should apply to the current issue, where, under the trial court's ruling, a family member would be denied recovery simply due to their nationality or domicile, not due to any difference in their claims.

> in D.C. pursuant to the FSIA venue provision in 28 U.S.C.
> 1391(f)(4), this question of D.C. tort law will likely arise
> in future cases before our district court. **And the District,
> as the home of thousands of government employees,
> military service members, and contractors, and as
> itself a potential target of terrorist attacks, has a
> substantial interest in determining who may recover
> for the emotional distress caused by a terrorist attack**.

*Owens*, 864 F.3d at 812 (emphasis added). Against all this precedent, the ruling

below stands alone as the only post-2008 amendments case involving an attack

directed at United States interests where D.C. law was not applied to the emotional

distress claims of foreign citizen family members.

In an attempt to support its position, the trial court below cited five cases—

*see* A249 (citing *Henkin v. Islamic Republic of Iran,* No. 18-cv-1273, 2021 WL

2914036 (D.D.C. July 12, 2021) (Lamberth, J.); *Rimkus v. Islamic Republic of

Iran,* 575 F. Supp. 2d 181, 196 (D.D.C. 2008) (Lamberth, J.); *Beer v. Islamic

Republic of Iran,* 574 F. Supp. 2d 1, 10 (D.D.C. 2008) (Lamberth, J.); *Blais v.

Islamic Republic of Iran*, 459 F. Supp. 2d 40, 54 (D.D.C. 2006) (Lamberth, J.); *Est.

of Heiser v. Islamic Republic of Iran,* 466 F. Supp. 2d 229, 271–356 (D.D.C. 2006)

(Lamberth, J.))—but not one of these is on point. Four of them—*Rimkus*, *Beer*,

*Blais*, and *Heiser*—were decided prior to the paradigm altering 2008 FSIA

amendments discussed above and thus had an entirely different approach to the

plaintiffs' state law claims. And the fifth, *Henkin*, flows from a different line of

FSIA claims where dual citizen Israeli-Americans are victimized by terror attacks

while living in or visiting Israel. The choice-of-law analysis in those cases is completely different because the United States government has no relation to the attack and the victim is not targeted due to his or her affiliation with America, but instead because of their affiliation with Israel. In those cases, the district courts have appropriately applied Israeli law, not D.C. law, to the family member claims. *See, e.g.*, *Borochov v. Islamic Republic of Iran*, 589 F. Supp. 3d 15, 38 (D.D.C. 2022); *Force v. Islamic Republic of Iran*, 464 F. Supp. 3d 323, 374 (D.D.C. 2020); *Fraenkel v. Islamic Republic of Iran*, 248 F. Supp. 3d 21, 39 (D.D.C. 2017).[6]

The trial court's failure to cite a post-2008 case involving an attack on U.S. interests reinforces Plaintiffs-Appellants' position on appeal. The March 16, 2010 EFP attack specifically and purposefully targeted the United States' interests. As a result, D.C., the federal seat of government and the home of the agencies that employed the attack victims, maintains a unique and compelling interest in the outcome of claims arising from that attack.

By reversing the judgment against the English Family Member Plaintiffs in this case, this Court can build on its prior guidance in *Owens*, 864 F.3d at 812, and

---

[6] Although not in the Israeli context, this same issue was raised in an attack targeting French security interests, and this Court relied upon precisely the same analysis in deciding to apply French law. *See Oveissi*, 573 F.3d at 843. In doing so, this Court even specifically stated that the direct victim claims arising from a terrorist attack and the associated family member claims for emotional distress were so "closely related" so as to discourage the possibility of disparate outcomes from different applications of substantive law. *Id.* at n.4.

further clarify to the district court that D.C. law is the appropriate choice-of-law for adjudicating family member claims for emotional distress whenever the underlying terrorist act specifically targets the interests of the United States.

C.    EVEN IF ENGLISH LAW WAS CORRECTLY APPLIED, THE DISTRICT COURT ERRONEOUSLY REJECTED CREDIBLE AND UNCONTROVERTED EVIDENCE PRESENTED BY PLAINTIFFS' EXPERT

In weighing its ruling, the trial court must consider Congress's stated purpose in enacting § 1605A—to "compensate the victims of terrorism [so as to] punish foreign states who have committed or sponsored such acts and [to] deter them from doing so in the future," while simultaneously recognizing the difficulty in obtaining "firsthand evidence and eyewitness testimony . . . from an absent and likely hostile sovereign," *Owens*, 864 F. 3d at 788 (citing *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1048 (D.C. Cir. 2014) (internal citations and quotation marks omitted)). Although "[t]he Court must scrutinize the plaintiff's allegations," *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 17 (D.D.C. 2016), it should also "accept as true the plaintiff's uncontroverted evidence," *see Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 100 (D.D.C. 2000); *see also Bennett v. Islamic Republic of Iran*, 507 F. Supp. 2d 117, 125 (D.D.C. 2007).

This Court reviews *de novo* a district court's assessment of submitted expert reports regarding a determination of foreign law. *See McKesson Corp. v. Islamic*

*Republic of Iran*, 753 F.3d 239, 242 (D.C. Cir. 2014) (reviewing *de novo* the district court's interpretation of foreign law) (citing *City of Harper Woods Emps. Ret. Sys. v. Olver,* 589 F.3d 1292, 1298 (D.C. Cir. 2009); Fed. R. Civ. P. 44.1).

        (i)      Mr. Bagot's Expert Credentials are Unchallenged

It is important to note that Plaintiffs-Appellants' expert on English law, Mr. Bagot, did not have his credentials questioned by the lower court. As a barrister in England and Wales for over twenty-five years and with a professional emphasis on personal injury and clinical negligence claims, Mr. Bagot retains the title of the most esteemed legal scholars in the United Kingdom, namely that of "King's Counsel." This Court has specifically acknowledged the importance and value of this role in other contexts.[7] *See, e.g.*, *City of Harper Woods Employees' Ret. Sys.*, 589 F.3d at 1295 (citing Black's Law Dictionary) (defining Queen's Counsel as "an elite, senior-level barrister or advocate").

The record below contains no reason to collaterally undermine the quality or reliability of Mr. Bagot's expert opinion.

---

[7] Prior to the death of Queen Elizabeth in 2022, Mr. Bagot's title was "Queen's Counsel," an equivalent expression of his level of expertise adapted to the ruling sovereign at the time.

(ii)     Mr. Bagot Presented Uncontroverted and Credible Evidence
         Supporting Plaintiffs-Appellants *Prima Facie* Case under
         English Law

As an expert in English law, Mr. Bagot utilized his extensive legal

experience and familiarity with the legal system of the United Kingdom to

conclude that there was in fact a potential avenue of recovery for the English

Family Member Plaintiffs. His ultimate conclusion, factoring in the potential

outcomes available, was that the "VOTCS [Victims of Overseas Terrorism

Compensation Scheme] would have provided a realistic avenue of recovery for the

English Plaintiffs," and that it "provides an appropriate analogy to the US IIED

claims, demonstrating that there is a viable cause of action in English law." A168,

A235. Mr. Bagot provided other factors indicating that an avenue of compensatory

relief existed under English law. A235.

Contrary to the lower court's conclusion that this remedy was "highly

speculative" and "insufficient to establish" an avenue of recovery for the English

Family Member Plaintiffs, A254, Mr. Bagot's opinion goes well beyond

speculation. He states that "it is more than merely arguable that such an *ex-gratia*

scheme would be interpreted to permit the Plaintiffs to qualify" and that the

English Family Member Plaintiffs would likely be granted relief because of the

nature of their harm and the forum's desire to maintain consistency. A168, A235.

Needless to say, a defaulting Iran provided no contrary testimony or argument on this issue. Based on the foregoing, the opinions of Mr. Bagot were both credible and uncontroverted. If this issue is reached based on the preceding choice-of-law decisions, this Court, after reviewing the record *de novo*, should reverse the district court's decision and remand for further proceedings.

## VII.  CONCLUSION

For the reasons stated above, this Court should reverse the district court's rulings and remand the case for further proceedings consistent with the rulings of this Court.

Respectfully submitted,

/s/ Kevin A. Hoffman
Randy D. Singer, Esq. (DCD Bar No. VA057)
Kevin A. Hoffman, Esq. (DC Bar No. 1044559)
Maryam M. Atty, Esq. (DCD Bar No. VA137)
SINGER HOFFMAN, LLC
1209A Laskin Road
Virginia Beach, VA 23451
Phone: (757) 301-9995
Email: randy.singer@singerhoffman.com
Email: kevin.hoffman@singerhoffman.com
Email: maryam.atty@singerhoffman.com
*Counsel for Plaintiffs-Appellants*

**CERTIFICATE OF COMPLIANCE**

1.  This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this brief contains [*6,124*] words.

    [    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.  This brief document complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>December 11, 2023</u>          <u>/s/ Kevin A. Hoffman</u>
                                          *Counsel for Appellants*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 11th day of December, 2023, I caused this Brief of Appellants and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

I further certify that I caused the required copies of the Brief of Appellant and Joint Appendix to be filed with the Clerk of the Court.

/s/ /s/ Kevin A. Hoffman
*Counsel for Appellants*